IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-----------------------------------------------x
                                               :
CYNTHIA HUCKEL                    :          3: 04 CV 399 (JBA)
                                               :
V.                                             :
                                               :
TOWN OF OLD SAYBROOK          :          DATE: JUNE 23, 2005
                                               :
-----------------------------------------------x

<u>RULING ON PENDING DISCOVERY MOTIONS</u>

_____On March 8, 2004, plaintiff commenced this action, stemming from her employment

as a police officer with the Old Saybrook Police Department, from February 28, 1999 until July

1, 2004; she alleges that she was subjected to sexual harassment and hostile work

environment.  The complaint alleges six counts: retaliation in violation of the First Amendment,

under 42 U.S.C. § 1983 (Count One); denial of equal protection under the Fourteenth

Amendment, under 42 U.S.C. § 1983 (Count Two); retaliation based on the exercise of

speech protected by the First Amendment and CONN. GEN. STAT. § 31-51q (Count Three);

breach of implied covenant of good faith and fair dealing (Count Four); harassment and

discrimination in the terms and conditions of employment based on gender and/or retaliation,

in violation of Title VII, 42 U.S.C. § 2000 <u>et seq.</u> (Count Five); and harassment and

discrimination in the terms and conditions of employment based on gender and/or retaliation,

in violation of the Connecticut Fair Employment Practices Act (Count Six).  On April 30, 2004,

defendant filed its answer and affirmative defenses.  (Dkt. #6).

        On March 9, 2005, U.S. District Judge Janet Bond Arterton referred this file to this

Magistrate Judge for settlement  (Dkts. ##27 & 29) and on April 11, 2005 for discovery.  (Dkt.

#42).  Under the latest scheduling order (Dkt. #44), all discovery is to be completed by July

29, 2005 and all dispositive motions are to be filed by August 31, 2005.  (¶ 2).  Suffice it to

say, the road toward the completion of discovery has not been a pretty one.  As of the

present, this Magistrate Judge already has ruled on four discovery motions (see Dkts. ##40-41, 43-46, 48, 52, 77-78, 80-81, 85-86, 96), and astonishingly enough, there are now ten pending discovery motions, some of which are overlapping in nature, all filed within a one-month period, to be addressed in this ruling.

First, on April 28, 2005, plaintiff filed a Motion to Compel Compliance by Thomas O'Brien with Subpoena Duces Tecum (Dkt. #60).[1] On May 11, 2005, defendant filed its brief in opposition. (Dkt. #61).[2]  The next day, plaintiff filed her reply brief.  (Dkt. #66).[3]

_____Second, on May 2, 2005, defendant filed a Motion for Protective Order, and brief and affidavit in support.  (Dkts. ##49-51).[4]  Two days later, plaintiff filed her briefs in opposition. (Dkts. ##59 & 64).[5]

---

[1]The following six exhibits were attached: copies of e-mail correspondence between counsel, dated March 21 and 31, 2005 (Exhs. A & C); copy of subpoena and Notice of Deposition to Thomas O'Brien, dated March 24, 2005 (Exh. B); copy of defendant's Objection to Production Requests Attached to Notice of Deposition of Thomas O'Brien, dated March 31, 2005 (Exh. D); copy of defendant's Objection to Production of Documents Requested in Subpoena Duces Tecum Directed to Thomas O'Brien, dated April 1, 2005 (Exh. E); copy of Re-Notice of Deposition, dated April 15, 2005 (Exh. F); and copy of case law (Exh. G).

[2]The following two exhibits were attached: copy of e-mail correspondence between counsel, dated March 30, 2005, with objection attached (Exh. 1); and copy of Old Saybrook Department of Police Services Incident Summary, dated March 30, 2005 (Exh. 2).

[3]Attached as Exh. A were excepts from the deposition transcript of Thomas O'Brien, taken on April 29, 2005.

[4]Attached to defendant's brief (Dkt. #50) was a copy of a subpoena, dated April 14, 2005, and Notice of Deposition, dated April 15, 2005, to Adam Stuart.

[5]The following seven exhibits were attached to Dkt. #64: copy of State Marshal's Return, dated April 18, 2005 (Exh. 1); copy of affidavit of plaintiff's counsel, dated May 3, 2005 (Exh. 2); copy of docket sheet in Denoia v. Stuart, 2:91 CV 1042 (AHN), copy of state court complaint, dated October 3, 1991, and copy of Answers to Interrogatories and Production, dated April 29, 1992, and multiple attachments (Exh. 3); copy of docket sheet in Denoia v. Stuart, 2:91 CV 976 (AHN), copy of Judgment, dated July 15, 1994, copy of verdict form, filed July 11, 1994, copy of state court complaint, dated October 3, 1991, and copy of plaintiff's Local Rule 9(c)(2) Statement, filed January 29, 1993, with affidavit of Christine Denoia, dated January 29, 1993 (Exh. 4); copy of defendant's Objections and Responses to Production of Documents Requested in Subpoena Duces Tecum Directed to Adam Stuart, dated April 28, 2005, with attachment (Exh. 5); copy of e-mail correspondence between counsel, dated April 28, 2005 (Exh. 6); and copy of correspondence between counsel, dated April 27, 2005 (Exh. 7).

Third, on May 4, 2005, plaintiff filed a Motion to Compel Re Deposition of Adam Stuart and Subpoena Duces Tecum and brief in support.  (Dkts. ##58 & 64).[6]  Three weeks later, on May 25, 2005, defendant filed its brief in opposition.  (Dkt. #73).[7]

_____Fourth, on May 5, 2005, plaintiff filed a Motion for Order Finding Jay Rankin in Contempt and brief in support.  (Dkts. ##53-54).[8]  Fifteen days later, on May 20, 2005, witness Jay Rankin filed his brief in opposition (Dkt. #69)[9] and four days after that, defendant filed its brief in opposition.  (Dkt. #71).  The next day, May 25, 2005, plaintiff filed her reply brief.  (Dkt. #74).  With permission of the Court, on June 6, 2005, Rankin filed his surreply brief.  (Dkt. #103; see also Dkts. ##91-92).

Fifth, on May 10, 2005, plaintiff filed a Motion for Orders Re: Defense Counsel's Relationships with Non-Party Employees and Officials of the Town of Old Saybrook and brief in support.  (Dkts. ##62-63).[10]  On June 1, 2005, defendant filed its brief in opposition.  (Dkt.

---

[6]See note 5 supra.

[7]Attached as Exh. 1 was a copy of excerpts from the deposition of Adam Stuart, taken on April 29, 2005, and attached as Exh. 2 was a copy of a letter, dated July 19, 2001, from Stuart to Deputy Chief O'Brien.

[8]The following three exhibits were attached plaintiff's brief: copy of a subpoena, dated April 15, 2005,  Notice of Deposition, dated April 14, 2005, and State Marshal's Returns, dated April 18, 2005 (Exh. A); and copies of correspondence of counsel, dated April 13 and April 15, 2005 (Exhs. B-C).

[9]Attached were the following three exhibits: copy of the deposition transcript of Jay Rankin, taken on April 29, 2005 (Exh. A); copy of correspondence between counsel, dated April 25, 2005 (Exh. B); and copies of correspondence, dated October 21, October 28, November 25 and December 29, 1992, and January 6, 1993, and General Releases, dated December 10, 1992 and November 18, 1992 (Exh. C).

[10]The following eight exhibits were attached to the brief (Dkt. #63): copy of defendant's Compliance with Rule 26(a)(1) Initial Disclosures, dated April 13, 2005 (Exh. A); copy of e-mail correspondence between counsel, dated March 31, 2005 (Exh. B); copies of correspondence between counsel, dated April 13 and April 14,  2005 (Exhs. C-D); copy of Association of the Bar of the City of New York Committee on Professional and Judicial Ethics Formal Opinion 2004-03 (Exh. E); copy of case law (Exhs. F-G); and affidavit of plaintiff's counsel, dated May 7, 2005 (Exh. H).

#87).[11]

Sixth, on May 13, 2005, plaintiff filed her Motion for Orders of Contempt and brief in support.  (Dkts. ##65-66).[12]   On June 2, 2005, defendant filed its brief in opposition.  (Dkt. #88).[13]

Seventh, on May 19, 2005, defendant filed its Motion for Protective Order Regarding Attorney-Client Privileged Communications and brief in support.  (Dkts. ##67-68).[14]  Eighteen days later, plaintiff filed her brief in opposition.  (Dkt. #79).

Eighth, on May 25, 2005, defendant filed its Motion for Order to Plaintiff's Counsel to Refrain from Interjecting Improper Objections, Impeding the Cross-Examination of Deponents, and Refusing to Comply with the Federal Rules of Civil Procedure and brief in support.  (Dkts. ##75-76).[15]   On June 3, 2005 and again on June 10, 2005, plaintiff filed her briefs in

---

[11]Copies of case law were attached.

[12]See note 3 supra regarding the exhibits attached to Dkt. #66.

[13]The following four exhibits were attached: copy of defendant's Objection to Production Requests Attached to Notice of Deposition of Thomas O'Brien, dated March 31, 2005 (Exh. 1); affidavit of Thomas O'Brien, dated June 1, 2005 (Exh. 2); copy of defendant's Objections and Responses to Production Requests Attached to Re-Notice of Deposition of Thomas O'Brien and Compliance with Subpoena Duces Tecum served on March 30, 2005, dated April 28, 2005 (Exh. 3); and copy of Notice of Deposition, dated March 24, 2005 (Exh. 4).

[14]The following three exhibits were attached: excerpts from the deposition transcript of Adam Stuart, taken on April 29, 2005 (Exh. 1); excerpts from the deposition transcript of Thomas O'Brien, taken on April 29, 2005 (Exh. 2); and affidavit of defense counsel, dated May 18, 2005 (Exh. 3).

[15]The following exhibits were attached to the brief (Dkt. #76): excerpts from the deposition transcript of Jay Rankin, taken on April 29, 2005 (Exh. 1); excerpts from the deposition transcript of plaintiff, taken on March 29, 2005 (Exh. 2); affidavit of defense counsel, Miguel A. Escalera, Jr., dated May 24, 2005 (Exh. 3); affidavit of defense counsel, Jennifer Lian Dixon, dated May 24, 2005 (Exh. 4), with five subexhibits, copies of correspondence of counsel, dated April 25 and May 18, 2005 (Exhs. 4.A-D) and copy of e-mail correspondence between counsel, dated May 23, 2005 (Exh. 4.E); and copy of Notice of Deposition of George Pohorilak, dated May 9, 2005 (Exh. 5).

4

opposition.  (Dkts. ##93 & 99).[16]

_____Ninth, on June 1, 2005, defendant filed a Motion for Protective Order Regarding Discovery of Matters Not Relevant to the Instant Case and brief in support. (Dkts. ##89-90).[17] Nineteen days later, plaintiff filed her brief in opposition.  (Dkt. #102).[18]

And last, on June 3, 2005, plaintiff filed a Motion to Compel Defendant to Comply with Rule 30(b)(6).  (Dkt. #94).[19]  Thirteen days later, defendant filed its brief in opposition.  (Dkt. #101).[20]

## I.  DISCUSSION

The critical issues that resonate throughout most of these pending motions are what is the extent of defense counsel's relationship with non-party employees of the municipality and   the corollary question of whether plaintiff's counsel may engage in _ex parte_

---

[16]Attached as Exh. A to both briefs was a copy of correspondence between counsel, dated April 11, 2005.

[17]The following exhibits were attached to the brief (Dkt. #90): excerpts from the deposition transcript of Jay Rankin, taken on April 29, 2005 (Exh. 1); excerpts from the deposition transcript of Thomas O'Brien, taken on April 29, 2005 (Exh. 2); and affidavit of counsel, dated June 1, 2005 (Exh. 3), attached to which was a copy of correspondence between counsel, dated May 31, 2005 (Exh. 3.A).

[18]Two exhibits were attached: copy of written correspondence between counsel, dated April 27, 2005 (Exh. A); and copy of Amended Complaint, dated February 13, 2004, in Lennon v. Town of Old Saybrook, 3:03 CV 2091 (JCH)(Exh. B).

[19]The following exhibits were attached: affidavit of plaintiff's counsel, dated June 2, 2005 (Exh. A); copy of Notice of Deposition, dated March 24, 2005 (Exh. B); copy of e-mail correspondence between counsel, dated February 4, March 21, March 24, March 25, May 6, May 9, May 13, May 23 and May 25, 2005 (Exhs. C-F, J-L); copies of correspondence between counsel, dated March 30, April 4 and April 5, 2005 (Exhs. G-I); and copy of Defendant's Objections and Responses to Rule 30(b)(6) Re-Notice of Deposition and Production Requests, dated May 26, 2005 (Exh. M).

[20]The following ten exhibits are attached: copies of e-mail correspondence between counsel, dated March 31, February 4, February 16, February 22, March 14, March 15, March 17, March 21-22, March 30, 2005, and June 6, 2005  (Exhs. 1-6 & 9-10); copy of Re-Notice of Deposition, dated May 23, 2005 (Exh. 7); and copy of letter of plaintiff's counsel to this Magistrate Judge, dated May 10, 2005 (Exh. 8).

communications with these employees.  Therefore, this Ruling first will address the two motions addressed solely to these issues.

### A.  PLAINTIFF'S MOTION FOR ORDERS RE: DEFENSE COUNSEL'S RELATIONSHIPS WITH NON-PARTY EMPLOYEES AND OFFICIALS OF THE TOWN OF OLD SAYBROOK (Dkt. #62) AND DEFENDANT'S MOTION FOR PROTECTIVE ORDER REGARDING ATTORNEY-CLIENT PRIVILEGE COMMUNICATIONS (Dkt. #67)

In its Rule 26(a)(1) Initial Disclosures, dated April 13, 2005, defendant Town of Old Saybrook ["Town"] identified twenty-one individuals, besides plaintiff, likely to have discoverable information to support its claims or defenses; of these twenty-one individuals, the Initial Disclosure indicates that the person "may only be contracted through" defense counsel for eleven of them – Chief Edmund Mosca, Deputy Chief Thomas O'Brien, Michael Pace, Carl Fortuna, Jr., Ernest Sparaco, Jean Winkler, Tim Conklin, Robert Mulvihill, JoAnne Klingerman, Adam Stuart, and Clifford Barrows.  (Dkt. #63, Exh. A, at 1-4).[21]  In her brief in support of her motion, plaintiff argues that defense counsel may not restrict the access of plaintiff and her attorney to witnesses who are employees or officials of the Town. (Dkt. #63, at 9-14).  Plaintiff further asserts that defense counsel have no authority to assume that they represent the Town's employees and officials, because the Rules of Professional Conduct do not allow an attorney-client relationship to be implied or vicarious as an extension of the lawyer's representation of another client (id. at 14-15), and defense counsel have unresolved conflicts of interest between the Town and its non-party employees and officials, which

---

[21]The Initial Disclosure is missing numbers 10 & 11.

In her brief, plaintiff identifies the positions of the eight individuals other than Chief Mosca and Deputy Chief O'Brien as follows: Michael Pace (First Selectman), Carl Fortuna, Jr. (member of Board of Police Finance), Ernest Sparaco (member of Board of Police Commissioners), Jean Winkler (same), Tim Conklin (Chair of Board of Police Commissioners), Robert Mulvihill (Police Officer), JoAnne Klingerman (Police Department Secretary), Adam Stuart (Lieutenant since November 2004 and police officer prior thereto), and Clifford Barrows (Police Officer).  (Dkt. #63, at 3 n.1).

conflicts prohibit counsel from representing all the Town's employees in this matter (id. at 15-23).

In contrast, defendant argues that plaintiff's counsel may not have ex parte communications with all employees and officials of the Town (Dkt. #87, at 3-7), and no conflict of interest exists (id. at 7-8).  As a logical extension of this argument, defendant further posits that defense counsel's communications with its witnesses are privileged.  (Dkt. #68, at 2-8).

"The Rules of Professional Conduct, as approved by the Connecticut Superior Court on October 1, 1986 and subsequently adopted by the judges of the District of Connecticut, express the standards of professional conduct for lawyers practicing in the District of Connecticut."[22]  In re: Grievance Proceeding, No. 3:01 GP 6 (SRU), 2002 U.S. Dist. LEXIS 18417, *3-4 (D. Conn. July 19, 2002).[23]  Rule 4.2 of the Connecticut Rules of Professional Conduct provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."  When a represented party is an individual, applying Rule 4.2 is simple -- a lawyer cannot communicate about the matter with an individual involved in that matter who is represented

---

[22]The Local Rules of Civil Procedure provide that: "The interpretation of said Rules of Professional Responsibility by any authority other than the United States Supreme Court, the United States Court of Appeals for the Second Circuit and the United States District Court for the District of Connecticut shall not be binding on disciplinary proceedings initiated in the United States District Court for the District of Connecticut." D. CONN. L. CIV. R. 3(a).

[23]In this case, U.S. District Judge Stefan Underhill addressed whether an attorney violates Rule 4.2 by communicating with in-house general counsel of an opposing party concerning litigation in which the opposing party is represented by outside counsel. Id. at *1.  In that case, plaintiff's counsel sent a letter to the defendant corporation's in-house counsel regarding settlement negotiations. Id. at *2.  Following the first letter, outside counsel directed plaintiff's counsel not to correspond with in-house counsel. Id.  Opposing counsel sent a second letter two months later when outside counsel failed to communicate with plaintiff's counsel. Id. at *2-3.  Judge Underhill generally noted that, for the purposes of Rule 4.2, general corporate counsel did not fall within the plain meaning of "party" so that absent notice otherwise, he can be approached by opposing counsel. Id. at *7-9.

by counsel.  In re: Grievance Proceeding, 2002 U.S. Dist. LEXIS 18417, at *6.  The purpose of Rule 4.2 "is to preserve the integrity of the lawyer-client relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer . . . [and] is designed to prevent situations in which a represented party may be taken advantage of by opposing counsel."  Pinsky v. Statewide Grievance Committee, 216 Conn. 228, 236 (1990).  Primarily, Rule 4.2 attempts to "avoid overreaching caused by disparity in legal knowledge; it is designed to protect lay parties."  In re: Grievance Proceeding, 2002 U.S. Dist. LEXIS 18417, at *6.

The issue becomes more complicated when an attorney represents a corporation or other entity.  The commentary to Rule 4.2 gives some guidance:

> This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation.  For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter.  Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so.  Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
>
> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.  If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for the purposes of this Rule.  (Compare Rule 3.4 (6)).
>
> This Rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.

(emphasis added).  As Superior Court Judge Jon Alander observed, the issue is whether the employees or agents of the corporation so personify the entity that they are governed by Rule

8

4.2.  Shoreline Computers, Inc. v. Warnaco, Inc., CV 990422853S, 2000 Conn. Super. LEXIS

842, *3 (Conn. Super. Ct. Apr. 3, 2000).[24]  See also GEOFFREY C. HAZARD. & W. WILLIAM

HODES, THE LAW OF LAWYERING: A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT

§ 4.2:105 (2d ed. 1998)(the prohibition on communication does not apply to all employees of

a corporation, but only "those who can hurt or bind the organization with respect to the matter

at hand. . . .");  see also In re: Grievance Proceeding, at *7).[25]

As just indicated, the commentary to Rule 4.2 observes that in the case of an

organization, communication by opposing counsel is prohibited with employees that have

managerial status, or whose acts or omissions may be imputed to the organization or may

constitute an admission on behalf of the organization.  Of the eleven individuals listed by

defendant in its Initial Disclosure, there can be no dispute that eight of them – Chief Mosca,

Deputy Chief O'Brien, First Selectman Pace, Finance Board member Fortuna, Police

Commissioners Sparaco, Winkler and Conklin, and Lieutenant Stuart –  are employees with

managerial status, or whose acts or omissions may be imputed to the Town constitute an

admission on behalf of the Town.

The more difficult question concerns whether the remaining three individuals – Police

Department Secretary Klingerman and Police Officers Mulvihill and Barrows – fall within this

category.  In Rivera v. Rowland, No. CV95-545629, 1996 Conn. Super. LEXIS 3398 (Conn.

_____

[24]Shoreline Computers concerned the extent to which an attorney for an adverse party can conduct ex parte interviews of former employees of a party represented by counsel concerning the subject matter of pending litigation.  Id. at *1.  Judge Alander followed then District Judge José Cabranes' decision in DuBois v. Gradco Systems, Inc., 136 F.R.D. 341 (D. Conn. 1991), that Rule 4.2 does not bar contact by an attorney for an adverse party with former employees of a corporation.  2000 Conn. Super. LEXIS 842, at *4.

[25]Connecticut Rules of Professional Conduct Rule 1.13, "Organization as a Client," provides: "A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents."  The commentary clarifies that "constituents," as used in the rule, means the "positions equivalent to officers, directors, employees and shareholders held by persons acting for organizational clients that are not corporations."

Super. Ct. Dec. 18, 1996), Connecticut Superior Court Judge Douglas Lavine observed that any approach to this question "must be fair, flexible, workable, tailored to the facts and circumstances of the case, and calculated to acknowledge and balance the legitimate interests of the parties." Id. at *14-15.  The issue in Rivera was whether attorneys employed by the Division of Public Defender Services Commission were "parties" to a lawsuit where the Commission and its Members were named as defendants.  Id. at *1 & 6.  Judge Lavine concluded that because there was nothing in the record to indicate that any individual assistant public defender had the authority to bind the Commission, they were thus considered to be "fact witnesses" and not "parties."  Id. at *16. Judge Lavine therefore held that defense counsel could not preclude plaintiff's counsel from speaking with these attorneys.  Despite this conclusion, Judge Lavine nonetheless entered protective orders to ensure that if attorneys of the Commission chose to speak with plaintiff's counsel, there would be a full understanding of the adversarial nature of the conversations, with full understanding of their right to refuse to speak or insist on the presence of counsel, and with full understanding that what they say could be used in the discovery and trial phases of this case and could be made public. Id. at *18-19 (citing Morrison v. Brandeis University, 125 F.R.D. 14, 19-20 (D. Mass. 1989) and Bartkus v. Meachum, Civil No. H-80-506 (D. Conn. Nov. 4, 1991)).

A similar issue was addressed in Service v. City of Meriden, No. CV94-0241732, 1995 Conn. Super.  LEXIS 3134 (Conn. Super. Ct. Nov. 9, 1995), a personal injury case where plaintiff's counsel initiated contact with the City Clerk, an administrative secretary for the Department of Public Works, the Deputy Director of Public Works, an account clerk for the Meriden Water Department, and the Assistant Director of Water Operations.  Id. at *1-2. Connecticut Superior Court Judge Jonathan E. Silbert found that "[a]t a minimum," the City Clerk, the Assistant Director of Water Operations, and the Deputy Director of Public Works

"f[e]ll within the categories described in the commentary" to Rule 4.2.  Id. at *7.   Relying primarily on Rule 4.3,[26] as opposed to Rule 4.2, Judge Silbert enjoined plaintiff's counsel from any contact of any kind with any "managerial employees as well as any other employees who are in a position to make admissions or any other way to bind the City . . . ," without first obtaining written consent from defense counsel.  Id. at *12-13.

Therefore, with respect to Chief Mosca, Deputy Chief O'Brien, First Selectman Pace, Finance Board member Fortuna, Police Commissioners Sparaco, Winkler and Conklin, and Lieutenant Stuart, defense counsel for the Town is deemed to represent these individuals under Rule 4.2 and plaintiff's counsel may not engage in ex parte communications with them, nor may she inquire into any matters that would violate the attorney-client privilege.  As to the other individuals – Police Department Secretary Klingerman and Police Officers Mulvihill and Barrows – and the other individuals listed on defendant's Initial Disclosure, defense counsel is not deemed to represent these individuals and plaintiff's counsel may engage in ex parte communications with them.  However, consistent with the Rivera, Morrison and Bartkus decisions, a protective order shall enter under which all non-managerial employees of the Town of Old Saybrook will be advised by plaintiff's counsel, prior to any ex parte communications, of the adversarial nature of the conversations, of their right to refuse to speak or insist on the presence of counsel, and with full understanding that what they say could be used in the discovery and trial phases of this case and could be made public.  Counsel shall prepare an appropriate Protective Order for this Magistrate Judge's approval **on or before July 11, 2005**.

---

[26]Connecticut Rules of Professional Conduct Rule 4.3 provides: "In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested, when the lawyer knows or reasonably should know that the unrepresented party misunderstands the lawyer's role in the matter.  The lawyer shall make reasonable efforts to correct the misunderstanding."

Therefore, Plaintiff's Motion for Orders Re: Defense Counsel's Relationships with Non-party Employees and Officials of the Town of Old Saybrook (Dkt. #62) and Defendant's Motion for Protective        Order Regarding Attorney-Client Privilege Communications (Dkt. #67) are <u>granted in part and denied in part to the extent set forth above</u>.

### B. PLAINTIFF'S MOTION TO COMPEL COMPLIANCE BY THOMAS O'BRIEN WITH SUBPOENA DUCES TECUM (Dkt. #60) & PLAINTIFF'S MOTION FOR ORDERS OF CONTEMPT (Dkt. #65)

At the request of defense counsel, the deposition of Deputy Chief O'Brien was postponed from March 30, 2005 until March 31, 2005. (Dkt. #60, Exhs. A-B; Dkt. #88, Exh. 4). The deposition was cancelled that morning due to Deputy Chief O'Brien being ill (Dkt. #60, Exh. C)[27] and defendant objected to the Production Requests attached to the Notice of Deposition on March 31 and April 1, 2005. (Id., Exhs. D-E; Dkt. #88, Exh. 1). Plaintiff renoticed the deposition for April 29, 2005 (Dkt. #60, Exh. F); the day prior thereto, defendant served its Objections and Response to Production Requests Attachment to Re-Notice of Deposition of Thomas O'Brien. (Dkt. #88, Exh. 3).

In her Motion to Compel (Dkt. #60), plaintiff objects to defense counsel having filed any objection on Deputy Chief O'Brien's behalf (at 2-5). Defense counsel has represented that Deputy Chief O'Brien responded at his deposition held on April 29, 2005. (Dkt. #61, at 5 & Exh. 1).

In her Motion for Order of Contempt and brief in support (Dkts. ##65-66), plaintiff's counsel similarly objects to defense counsel representing him at the deposition (Dkt. #66, at

---

[27]According to plaintiff' counsel, defense counsel reported that Deputy Chief O'Brien was "deathly ill," whereas defense counsel represented that he had "serious medical issues." (Id.). In point of fact, Deputy Chief O'Brien suffered from a "viral infection," with an "upset stomach" that caused him to vomit, and experienced visual distortions from his diabetes. (Dkt. #66, at 16-17 & Exh. A, at 154-61; Dkt. #88, Exh. 2, ¶ 8). Whatever the reason, Deputy Chief O'Brien was too ill on March 31, 2005 to attend his deposition.

2-14 & Exh. A),[28] and argues that there was no justification for Deputy Chief O'Brien's refusal to comply with the subpoena and defense counsel's directions to him not to answer questions (at 15-18 & Exh. A), and that Deputy Chief O'Brien has still failed to comply with the subpoena (at 18-20 & Exh. A).   In its brief in opposition (Dkt. #88), defendant responded that Deputy Chief O'Brien has appeared for his deposition and complied with the subpoena (at 2-4) and the Town properly made objections prior to and during his deposition (at 4-5).

For the reasons stated in Section I.A. supra, defense counsel may assert objections on behalf of Deputy Chief O'Brien.  However, at his deposition, Deputy Chief O'Brien was somewhat ambivalent over whether all responsive documents had been disclosed, having delegated the responsibility to JoAnne Klingerman, his executive assistant, with respect to other administrative proceedings.  (Dkt. #66, Exh. A, at 20-28, 30, 120-22.  See also Dkt. #88, Exh. 2, ¶¶ 4-5 & 7).  Therefore, plaintiff's Motion to Compel (Dkt. #60) is granted in part to the limited extent that Deputy Chief O'Brien is to conduct a second search of records to determine if there are any additional responsive documents that have not been already produced; if so, such documents shall be produced **on or before July 11, 2005**.   Similarly, plaintiff's Motion for Orders of Contempt (Dkt. #65) is denied.

C.  DEFENDANT'S MOTION FOR PROTECTIVE ORDER (Dkt. #49) & PLAINTIFF'S
     MOTION TO COMPEL RE DEPOSITION OF ADAM STUART AND SUBPOENA
     DUCES TECUM (Dkt. #58)

The remaining six motions deal, in large part, with alleged sexual activities of various Old Saybrook police officers.  Plaintiff seeks to portray the Old Saybrook Police Department as a law enforcement version of Wisteria Lane of Desperate Housewives fame.

---

[28]Plaintiff's counsel makes mention of the public reprimand of Police Commission Raymond Dobratz for having complied with a subpoena by plaintiff's counsel to testify at a hearing in her action pending in the Connecticut Superior Court and for having testified that plaintiff was a good officer; this disciplinary action allegedly was based on the advice of defense counsel.  (At 14).  That incident is not before this Court.

On April 14-18, 2005, plaintiff served a Subpoena and Notice of Deposition, with requested documents, on Adam Stuart, for a deposition scheduled on April 29, 2005.  (Dkt. #50, Exh. 1; Dkt. #64, Exh. 1).   On April 28, 2005, the day before the deposition, defendant served its Objections and Responses to Production of Documents Requested in Subpoena Duces Tecum Directed to Adam Stuart (Dkt. #64, Exh. 5); counsel were unable to resolve their differences in e-mail correspondence that day.  (Id., Exh. 6).  The deposition on April 29, 2005 only lasted twenty minutes, which was spent almost exclusively on whether defense counsel represented Stuart.  (Dkt. #73, Exh. 1, at 3-22).

In its Motion for Protective Order, defendant objects to Request No. 3, which seeks production of documents of the Old Saybrook Police Department relating to Denoia v. Stuart, 2:91 CV 976 (AHN) and Denoia v. Stuart, 2:91 CV 1042 (AHN); the plaintiff, Christine Denoia is the ex-wife of Lieutenant Stuart.  (Dkt. #49; Dkt. #50, at 2-4).  As defendant argues, these two lawsuits were filed more than fourteen years ago, prior to plaintiff's employment with the Town, and are not relevant to plaintiff's claims.  (Dkt. #50, at 3). Defendant requests that the Court conduct an in camera review of these documents.  (Dkt. #49, at 1; Dkt. #50, 2).  In her brief in opposition to defendant's motion and in support of her own Motion to Compel (Dkt. #64), plaintiff argues that defendant has waived its objections (at 6-10), defendant has no standing to make these objections (id. at 10-12), and  the requested information is relevant (id. at 12-21).[29]  In its brief in opposition to plaintiff's motion (Dkt. #73), defendant repeats that its objections were proper in light of Stuart's status as a Lieutenant (at 1-4), and the discovery is not relevant (at 4-8).

As addressed in Section I.A. supra, defense counsel may properly represent Stuart's

---

[29]Plaintiff also seeks attorney's fees, especially since most of the materials are a matter of public record (id. at 21-22).  This request is denied.

interests at his deposition.  While it is not at all clear that the <u>Denoia</u> lawsuits have any relevance to the issues raised here, in an abundance of caution, **on or before July 11, 2005**, defense counsel shall provide  copies of all documents not in the public domain and not already attached as Exhs. 3-4 to Dkt. #64 to the Magistrate Judge's Chambers for her <u>in camera</u> review.  If the Magistrate Judge finds that any of the documents are relevant and must be disclosed, a continued deposition will be ordered.

Therefore, Defendant's Motion for Protective Order (Dkt. #49) and Plaintiff's Motion to Compel re Deposition of Adam Stuart and Subpoena Duces Tecum (Dkt. #58) <u>are granted in part and denied in part to the extent that an <i>in camera</i> review is ordered</u>.

### D. PLAINTIFF'S MOTION FOR ORDER FINDING JAY RANKIN IN CONTEMPT (Dkt. # 53)

On April 14-15, 2005, plaintiff served a subpoena and Notice of Deposition, with requested documents, on Jay Rankin, for a deposition scheduled for April 29, 2005.  (Dkt. #54, Exh. A).  On April 13, 2005, plaintiff's counsel sent a letter to defense counsel in this case and to Rankin's private attorney, to which Rankin's private counsel responded two days later.  (<u>Id.</u>, Exhs. B-C).  Rankin was deposed on April 29, 2005.  (Dkt. #69, Exh. A.  <u>See also</u> Dkt. 69, Exh. B).

At issue in plaintiff's motion are Requests Nos. 3 and 4, which seek all documents of the Old Saybrook Police Department regarding any complaints against Rankin for unlawful sexual assault, rape, sex discrimination, or sexual harassment (No. 3), and all tape recordings, photographs, or video recordings Rankin ever made of plaintiff's voice or image, and any transcriptions or copies thereof (No. 4).  (Dkt. #53, at 2; Dkt. #54, at 2).   Plaintiff complains that Rankin failed to produce any documents or materials in response to these two requests when he appeared at his deposition on April 29, 2005.  (Dkt. #53, at 2-4; Dkt. #54, at 2-4).

Plaintiff contends that with respect to Request No. 3, a woman made a complaint to the Connecticut State Police that Rankin forcibly sodomized her when the two were returning from a demonstration of an emergency helicopter at the Durham Fair; Request No. 4 pertains to a tape-recording Rankin made using the videotape machine mounted on a patrol car of a conversation between plaintiff and Rankin, which was sexual in nature.  (Dkt. #54, at 2-3).  In her brief (Dkt. #54), plaintiff argues that Rankin has waived any objections to the subpoena (at 7) and that the materials sought are relevant (at 7-9).[30]

In his brief in opposition (Dkt. #69), Rankin acknowledged that in 1991, a woman, Karen Baber, had accused him of forcing her to engage in oral sex with him, while he was off-duty and not acting in his capacity as a police officer; he testified at his deposition that the sexual relations were consensual, and in late 1992, the two of them exchanged releases with one another.  (At 4, & Exh. A at 24-32, Exh. C).   Limited documents relating to this incident later were disclosed to plaintiff's counsel.  (Id. at 5 & Exh. C; Dkt. #103, at 1-2).  Rankin further testified that in 1999 or 2000, he engaged in one instance of consensual sexual contact with plaintiff, at the Madison Airport, while they were off duty and not in uniform, consisting of "necking" and touching each other's private areas outside their clothing.  (Dkt. #69, at 4, & Exh. A, at 38-39, 65-71, 80-83, 87-91, 104-05, 110-11).   Rankin further testified that approximately five years ago, he made an audiotape of a conversation with plaintiff, approximately twenty minutes long, using the video recorder in his squad car, in which plaintiff expressed interest in meeting Rankin at night if she could get away from her husband and related an incident in which she engaged in sexual activity with a female in a bathroom at a prior job; he testified that he could not locate that tape, which belonged to him.  (Id. at 4, &

---

[30]Plaintiff's argument, that Rankin's private attorney was not authorized to attend the deposition (at 9-10), is now moot, in that counsel has filed an appearance in this case.  (Dkt. #57).

Exh. A, at 8-10, 13-18, 32-54, 58-62, 131-32).   Rankin argues that he should not be held in contempt as the documents regarding the 1991 incident were not in the possession of the Old Saybrook Police Department and Rankin made a good faith effort to comply.  (Id. at 5-8; Dkt. #103, at 1-2).  He further argues that he should not be held in contempt regarding the tape recording because he testified that he could not locate the tape.  (Dkt. #69, at 8-9).

<u>Plaintiff's Motion for Order Finding Jay Rankin in Contempt</u> (Dkt. #53) is <u>denied insofar as it seeks to preclude defendant from offering the disputed materials in this litigation, ordering attorney's fees to plaintiff's counsel, and striking all of Rankin's objections at the deposition; it is granted, however, to the limited extent that plaintiff may reconvene Rankin's deposition in order to question him on the few documents belatedly produced regarding the 1991 Baber incident, and Rankin shall file an affidavit, **on or before July 11, 2005,** detailing the efforts he made to locate the twenty-minute tape.</u>

<u>E. DEFENDANT'S MOTION FOR ORDER TO PLAINTIFF'S COUNSEL TO REFRAIN FROM INTERJECTING IMPROPER OBJECTIONS, IMPEDING THE CROSS-EXAMINATION OF DEPONENTS, AND REFUSING TO COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE (Dkt. #75)</u>

Of the ten pending motions, this one is the most disturbing, as it reflects the lowest point in the relationship, or lack thereof, between counsel.  In this motion and brief (Dkt. ##75-76), defense counsel complains about the behavior of plaintiff's counsel at the Rankin deposition, <u>see</u> Section I.D. <u>supra</u>, namely that plaintiff's counsel impeded his cross-examination of the deponent (Dkt. #76, at 3-5 & Exh. 1), she breached her agreement to reserve all objections, except as to the form of the question, until trial, so that her objections were improper (id. at 5-6 & Exhs. 1-2), she improperly threatened to end the deposition (id. at 6), and she refused to comply with Fed. R. Civ. P. 45(b)(1) by refusing to provide prior notice regarding the issuance of subpoenas duces tecum, to Deputy Chief O'Brien, Lieutenant Stuart, Rankin and possibly non-party witness George Pohorilak (id. at 7-8 & Exhs. 4, 4A-4E,

& 5).  In her briefs in opposition (Dkts. ##93 & 99), plaintiff's counsel denies having frustrated defense counsel's examination of Rankin (at 1-5), asserts that the Federal Rules do not require the service of the subpoena cover page (at 5-6), and that defense counsel have been conducting themselves with "unclean hands" (at 6-8).

_____Plaintiff's argument regarding Rule 45(b)(1) is simply incorrect. See ATSI Communications, Inc. v. The Shaar Fund, Ltd., 2003 WL 1877227, at *2-3 (S.D.N.Y. Apr. 3, 2003); Murphy v. Board of Educ. of Rochester City Sch. Dist., 196 F.R.D. 220 (W.D.N.Y. 2000); SS & J Morris, Inc. v. I. Appel Corp., 2000 WL 959718, at *1-2 (S.D.N.Y. 2000); Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 411-12 (S.D.N.Y. 2000). From henceforth, plaintiff's counsel is to provide defense counsel prior notice of all subpoenas.

It is true that defense counsel has reason to complain about the behavior of plaintiff's counsel, but it is equally true that plaintiff's counsel has reason to complain about the behavior of defense counsel.  (See, e.g., Ruling on Plaintiff's Motion to Quash Subpoena Duces Tecum to Southern Connecticut State University, filed June 8, 2005 (Dkt. #96)).  In the hope of not further exacerbating the unnecessary (and at times inexcusable) tensions between all three counsel here, defendant's Motion for Order to Plaintiff's Counsel to Refrain from Interjecting Improper Objections, Impeding the Cross-Examination of Deponents, and Refusing to Comply with the Federal Rules of Civil Procedure (Dkt. #75) is granted in limited part to the extent that plaintiff's counsel is ordered to provide defense counsel with prior notice of all subpoenas and is denied without prejudice to renew with respect to all other requests.

### F.  DEFENDANT'S MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY OF MATTERS NOT RELEVANT TO THE INSTANT CASE (Dkt. #89)

In this motion and brief (Dkts. ##89-90), defendant seeks a protective order to preclude discovery relating to the complaints and/or lawsuits brought by Karen Baber and Debra Lennon against the Town of Old Saybrook.  In her brief in opposition (Dkt. #102), plaintiff

argues that defense counsel did not make a good faith effort to resolve the instant discovery before filing this motion (at 1-3), defense counsel has no standing to seek protective orders on behalf of Rankin, Stuart, O'Brien, or anyone else (at 3-5), the discovery requests at issue are reasonably calculated to lead to the discovery of admissible evidence (at 5-9), and defendant fails to show a <u>bona fide</u> need for a protective order (at 9-12).

The standing issue already has been resolved in Section I.A. <u>supra</u>. The Baber incident has been addressed in Section I.D. <u>supra</u> with respect to the Rankin deposition. (<u>See also</u> Dkt. #90, at 3 & Exhs. 1-2). Consistent with the conclusion reached in Section I.D. <u>supra</u>, the 1991 incident regarding Baber may be relevant, insofar as plaintiff herself had a romantic and/or sexual relationship with Rankin some eight to nine years later.

As with the <u>Denoia</u> litigation discussed in Section I.C. <u>supra</u>, it is not at all clear that <u>Lennon v. Town of Old Saybrook</u>, 3:03 CV 2029 (JCH),  has any relevance to the issues raised here.  (Dkt. #90, at 3 & Exhs. 3 & 3A; Dkt. #102, at 7-9 & Exh. B). However, consistent with the conclusion reached in Section I.C. <u>supra</u>, in an abundance of caution, **on or before July 11, 2005**, defense counsel shall provide copies of all documents not in the public domain to the Magistrate Judge's Chambers for her <u>in camera</u> review.  If the Magistrate Judge finds that any of the documents are relevant and must be disclosed, a deposition on this issue will be ordered.

Thus, Defendant's Motion for Protective Order Regarding Discovery of Matters Not Relevant to the Instant Case (Dkt. #89) is <u>denied with respect to the 1991 Baber incident and is granted with respect to the <i>Lennon</i> litigation to the extent that an <i>in camera</i> review is ordered</u>.

_____

### G.  PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO COMPLY WITH RULE 30(b)(6) (Dkt. #94)

On March 24, 2005, plaintiff served her Notice of Deposition, with requested documents on defendant Town of Old Saybrook, for a deposition scheduled on March 30, 2005.  (Dkt. #94, Exh. B).  After many communications between counsel about the timing and breadth of this deposition, it was finally scheduled for May 27, 2005, with Chief Mosca as the Town representative. (Id., Exhs. C-L; Dkt. #101, Exhs. 1-6).  On May 23, 2005, plaintiff served her Re-Notice of Deposition, with requested documents.  (Dkt. #101, Exh. 7).  On May 26, 2005, the day before the deposition, defendant filed its Objections and Responses to Rule 30(b)(6) Re-Notice of Deposition and Production Requests.  (Dkt. #94, Exh. M).  The deposition did not go forward as a result.  (Dkt. #94, at 3).

In her Motion to Compel (Dkt. #94), plaintiff argues that defendant's objections are untimely, frivolous and dilatory (at 3-12) and disagrees with defendant's objection that it cannot designate a Rule 30(b)(6) representative for most of the requested examination (at 12-15).  In its brief in opposition (Dkt. #101), defendant argues that plaintiff's counsel has failed to comply with Local Rule 37(a)2 and contrary to plaintiff's assertions, Chief Mosca can testify as to most of the areas of inquiry identified by plaintiff (at 2-5), and this deposition has been rescheduled with the agreement of plaintiff's counsel (at 5-9).

The Magistrate Judge agrees that with respect to the eight requests at dispute (Nos. 1, 2, 3, 4, 5, 7, 8 & 13)(Dkt. #94, at 4-12), counsel ought attempt to resolve their disputes first.  Therefore, Plaintiff's Motion to Compel Defendant to Comply with Rule 30(b)(6) (Dkt. #94) is granted to the limited extent that a Rule 30(b)(6) deposition is ordered, but is denied without prejudice to renew with respect to the eight production requests at issue.

20

## II. CONCLUSION

For the reasons stated above, Defendant's Motion for Protective Order (Dkt. #49) is granted in part and denied in part to the extent that an *in camera* review is ordered;

Plaintiff's Motion for Order Finding Jay Rankin in Contempt (Dkt. #53) is granted in limited part and denied in large part to the extent set forth in Section I.D. *supra*;

Plaintiff's Motion to Compel re Deposition of Adam Stuart and Subpoena Duces Tecum (Dkt. #58) is granted in part and denied in part to the extent that an *in camera* review is ordered;

Plaintiff's Motion to Compel (Dkt. #60) is granted in limited part to the extent set forth in Section I.B *supra*;

Plaintiff's Motion for Orders Re: Defense Counsel's Relationships with Non-party Employees and Officials of the Town of Old Saybrook (Dkt. #62) is granted in part and denied in part to the extent set forth in Section I.A. *supra*;

Plaintiff's Motion for Orders of Contempt (Dkt. #65) is denied;

Defendant's Motion for Protective Order Regarding Attorney-client Privilege Communications (Dkt. #67) is granted in part and denied in part to the extent set forth in Section I.A. *supra*;

Defendant's Motion for Order to Plaintiff's Counsel to Refrain from Interjecting Improper Objections, Impeding the Cross-Examination of Deponents, and Refusing to Comply with the Federal Rules of Civil Procedure (Dkt. #75) is granted in limited part to the extent set forth in Section I.E *supra* and is denied without prejudice to renew with respect to all other requests;

Defendant's Motion for Protective Order Regarding Discovery of Matters Not Relevant to the Instant Case (Dkt. #89) is granted in part and denied in part to the extent set forth in

Section I.F. *supra*; and

Plaintiff's Motion to Compel Defendant to Comply with Rule 30(b)(6) (Dkt. #94) is granted in limited part and denied without prejudice to renew to the extent set forth in Section I.G. *supra*.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; Fᴇᴅ. R. Cɪᴠ. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.[31]

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);**  Fᴇᴅ. R. Cɪᴠ. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 23rd day of June, 2005.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge

---

[31]As is abundantly clear from this ruling, all counsel can, and must, do better in their interactions with respect to continued discovery here.

If either counsel believes that a third settlement conference before this Magistrate Judge would be productive (see Dkts. ## 38-39 & 95), he or she should contact Chambers accordingly.